IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| THE STANDARD FIRE INSURANCE COMPANY, | : : : | |
| Plaintiff | : : : : | CIVIL ACTION NO. 3:05-0580 (JUDGE CAPUTO) |
| v. | : : | |
| VICTORIA WAGNER, ET AL., | : : | |
| Defendants | : | |

## **MEMORANDUM**

    This case presents the issue of the extent of the rights of an insured to underinsurance benefits under the provisions of his own policy when he has settled with the tortfeasor insured.

In August 2000, Defendants Victoria Wagner, Jennifer Heath and others were involved in an accident with a vehicle operated by Samuel Keir. Mr. Keir failed to stop his vehicle at a stop sign and as a result collided with the Wagner vehicle in which Ms. Heath was a passenger. Mr. Keir's brother, Benjamin, was a passenger in the Keir vehicle and later died from injuries suffered in the collision. Samuel Keir was insured by Progressive Insurance Company and his employer, Valley Antenna and Satellites, Inc. ("Valley Antenna") was insured by Selective Insurance Company.

Progressive's coverage was $100,000 per person and $300,000 per accident.

Selective's coverage was $1 million dollars for bodily injury and an excess liability limit of $5 million dollars.

Defendant Wagner settled against Samuel Keir and Valley Antenna for $40,000, $34,000 of which was paid by Progressive and $6,000 of which was paid by Selective. Defendant Heath settled against Samuel Keir and Valley Antenna for $95,000, $72,750 of which was paid by Progressive and $22,250 of which was paid by Selective. Standard Fire, the plaintiff and Defendant Wagner's personal automobile insurance carrier consented to the settlements noted above.

Defendants Wagner and Heath now seek to recover from Plaintiff, Standard Fire, under the underinsurance motorist coverage (UIM) under the policy.

The case is before me on Standard Fire's complaint seeking a declaratory judgment as to coverage and its extent. Cross motions for summary judgment were filed and oral argument on the motions was held on May 2, 2006. The matter is ripe for disposition.

## **STANDARD OF REVIEW**

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56 (c). A fact is material if proof of its existence or non-existence might affect the outcome of the suit under the applicable substantive law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Where there is no material fact in dispute, the moving party need only establish that it is entitled to judgment as a matter of law. Where, however, there is a disputed issue of

material fact, summary judgment is appropriate only if the factual dispute is not a genuine one. *See id.* at 248. An issue of material fact is genuine if "a reasonable jury could return a verdict for the nonmoving party." *Id.*

Where there is a material fact in dispute, the moving party has the initial burden of proving that (1) there is no genuine issue of material fact; and (2) the moving party is entitled to judgment as a matter of law. *See* CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE: CIVIL 2D § 2727 (2d ed. 1983). The moving party may present its own evidence or, where the nonmoving party has the burden of proof, simply point out to the court that "the nonmoving party has failed to make a sufficient showing of an essential element of her case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

All doubts as to the existence of a genuine issue of material fact must be resolved against the moving party, and the entire record must be examined in the light most favorable to the nonmoving party. *See White v. Westinghouse Elec. Co.*, 862 F.2d 56, 59 (3d Cir. 1988). Once the moving party has satisfied its initial burden, the burden shifts to the nonmoving party to either present affirmative evidence supporting its version of the material facts or to refute the moving party's contention that the facts entitle it to judgment as a matter of law. *See Anderson*, 477 U.S. at 256-257.

The court need not accept mere conclusory allegations or denials taken from the pleadings. *See Schoch v. First Fidelity Bancorporation*, 912 F.2d 654, 657 (3d Cir. 1990). In deciding a motion for summary judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

**DISCUSSION**

The Plaintiff argues that the exhaustion clause in its policy bars the defendants' claim to UIM benefits under the policy. The exhaustion clause provides:

> **We will pay Underinsured Motorists Coverage only if . . . the limits of liability under any applicable bodily injury liability bonds or policies have been exhausted by the payment of judgments or settlements. (Exh. B., Appendices to Plaintiff's Motion for Summary Judgment).**

An insured is not required to exhaust all applicable liability policies as a condition precedent to making a claim for UIM benefits. In *Boyle v. Erie Ins. Co.*, the Pennsylvania Superior Court noted that exhaustion clauses "cannot validly be interpreted to require an insured to seek recovery from other than the owners and operators of vehicles involved in the accident." 656 A.2d 941, 942 (Pa. Super. Ct. 1995). And further "where the best settlement available is less than the [tortfeasor's] liability limits, the insured should not be forced to forgo settlement and go to trial in order to determine the issue of damages." *Id.* *(quoting Schmidt v. Clothier,* 338 N.W. 2d 256, 260-261 (Minn. 1983)). To prevent the insured from settling for less than the best settlement and then seeking to fill the gap from the settlement amount to the best settlement from the UIM coverage, the *Boyle* court held "thus, when the insureds settled their claim against the tortfeasor's liablity carrier for less than the policy limits, the underinsured motorist carrier was entitled to compute its payment to its injured insureds as though the tortfeasor's policy limits had been paid." *Id.* at 943-944.

In *Boyle*, the exhaustion clause spoke of exhausting the liability insured of "all" responsible motor vehicles. Here, the language of the policy speaks of "any" liability policy.

Plaintiff argues "any" means all and notes the use of the phrase "any" policies "have" been exhausted. Defendants argue "any" means any one of many. It is my view that in the context of this clause and the related application for underinsured motorist benefits without the interpleading of policy limits as in *Overfield v. Ohio Cas. Ins. Co.*, 39 Pa. D. & C. 4th, 548 (Lackawanna County 1998), cited by the Defendants, the purpose of the exclusionary clause is the same as the clause in *Boyle.*

This means that the Plaintiff, while not succeeding in its claim that the claim for UIM benefits is barred, is entitled to a credit for the liability limits of the tortfeasors against whom Defendants pursued claims and received settlements. In that way, the concerns expressed in *Boyle* regarding weak settlements and unfair gap recoveries on the UIM policy will be avoided.

Defendant cites *Overfield* for the proposition that the credit should not be the difference between the settlement and the policy limit, but that the credit should be for the amounts actually received in settlement. *Overfield*, however, involved a tortfeasor's carrier who interpleaded the policy limits so as to be divided among several plaintiffs. Thus, the court recognized the unfairness of applying the credit for the policy limits as a condition precedent to the pursuit of UIM benefits. Since the policy limits would be exhausted, the concern in *Boyle* that a weak settlement would cause an unfair claim against UIM carrier was not present.

This case is not factually the same as *Boyle* or *Overfield*. It is more like *Bremer v. Prudential Property and Cas. Ins. Co.*, No. 03-1810, 2004 U.S. Dist. Lexis 16960 (M.D. Pa. Aug. 18, 2004)(where one plaintiff received settlements from two different tortfeasors' policies, one settlement was for less than the limits of the policy, the court held the UIM

5

carrier was entitled to a credit for the difference between the settlement amount and that policy limit). Here all settlements were for less than the policy limits of the alleged tortfeasor.

The fundamental problem in the analysis of how to approach the issue is the assumption that a settlement for less than policy limits is not the measure of the liability of the putative tortfeasor. Implicit in the analysis as to whether to permit the recovery of UIM benefits is an evaluation of the merit of the settlement in terms of the liability of the putative tortfeasor and the damages suffered by the claimant.

In this case, the tortfeasor was Samuel Keir who failed to stop at a stop sign and as a result ran into the Defendant Wagner's vehicle. This policy had limits of $100,000 per person and $300,000 per accident. Mr. Keir worked for Valley Antenna, however there is a substantial question as to whether Mr. Keir was in the course of his employment at the time of the accident. Mr. Keir's work for Valley Antenna was over for the day, and he was on his way to his mother's to drop off her brother. This was against Valley Antenna policy (See Marc O'Neill's Deposition, p. 53, line 23 to p. 54, line 11). In evaluating the settlement, *vis a vis* Valley Antenna's carrier, there is a real question of liability, which arguably translates into the question of whether Valley Antenna's policy is an "applicable policy" under the UIM exhaustion clause in Plaintiff's policy. Selective Insurance Co., Valley Antenna's carrier, had a primary bodily injury limit of $1 million dollars and an excess liability limit of $5 million dollars under an umbrella policy. [1]

The Defendant's question whether Valley Antenna's liability policy for $1 million

---

[1] While unclear, it is arguable that the excess policy is not an "applicable bodily injury liability . . polic[y].

6

dollars should provide a basis for a credit in the UIM claim.  It seems unfair to do so in these circumstances, *viz* a settlement, when there is a real question of Valley Antenna's liability which was never resolved judicially.   The fact that a settlement was reached and liability not admitted in a circumstance that poses a real question as to liability, presents an interesting question.  However, the *Boyle* case and the *Bremer* case are clear in the concern that the UIM carrier should receive credit up to the policy limits of the liability carrier.  This makes good sense since underinsurance benefits should be just that *viz* coverage when there is not enough coverage to compensate the plaintiff from the liability carrier.  The only way to assure this agreement between an insurer and its insured is to give the underinsured carrier a credit in circumstances where liablity coverage was not exhausted.  Attempting to evaluate whether a settlement was for less (or more) that it should have been is not relevant.  The recovery by settlement as against the amount available from the liability carrier is what is relevant.

The issue, given diversity jurisdiction, is what would the Pennsylvania Supreme Court decide in this case.

Therefore in my view, this case is simply governed by *Boyle* and *Bremer* where Judge Vanaskie said that "in these circumstances, the underinsured carrier receives credit for the liability limits of the tortfeasors against when the claimant pursued claims and received recoveries."  *Bremer,* 2004 U.S. Dist. Lexis 16960 at *17-18.

The plaintiff's motion will be granted and the defendants' motion will be denied.

7

An appropriate order follows.

Date:    June 26, 2006                              s/ A. Richard Caputo
                                                    A. Richard Caputo
                                                    United States District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| THE STANDARD FIRE INSURANCE COMPANY,  :<br>  :<br>  Plaintiff  :<br>  :<br>v.  :<br>  :<br>VICTORIA WAGNER, ET AL.,  :<br>  :<br>  Defendants  : | CIVIL ACTION NO. 3:05-0580<br><br>(JUDGE CAPUTO) |

## **ORDER**

NOW, this 26th day of June, 2006, **IT IS HEREBY ORDERED** that the Plaintiff's Motion for Summary Judgment (Doc. 11), is **GRANTED** and the Defendants' Cross-Motion for Partial Summary Judgment is **DENIED**.   Judgment is entered for the plaintiff and against the defendants.


                                          s/ A. Richard Caputo
                                          A. Richard Caputo
                                          United States District Judge